Virginia SCHWARTZLE, Plaintiff and Appellant,

v.

The AUSTIN COMPANY and Electric Construction Company, Defendants and Appellees.

No. 16071.

Supreme Court of South Dakota.

Considered on Briefs May 27, 1988.

Decided Sept. 14, 1988.
Rehearing Denied Oct. 20, 1988.

Carleton R. Hoy, James L. Hoy of Hoy & Hoy, Sioux Falls, for plaintiff and appellant.

Comet H. Haraldson of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellees.

MILLER, Justice.

In this appeal we hold that the trial court did not abuse its discretion in dismissing a civil action because of plaintiff's failure to prosecute.

## FACTS

A chronology of events best articulates what occurred in this action.

### 1972

On October 16, 1972, plaintiff injured her right leg and knee when she fell into an excavation trench as she was crossing a lot to enter her place of employment at the John Morrell & Company plant in Sioux Falls, South Dakota.

### 1974

Plaintiff filed a claim for worker's compensation with the South Dakota Department of Labor.

### 1975

Plaintiff began seeing an orthopedic surgeon, Dr. Nice, who, on September 22, 1975, wrote to her former attorney informing him that plaintiff had a 15% impairment of her right lower extremity.

Plaintiff commenced this action against the general contractor, The Austin Company, and the subcontractor, Electric Construction Company, by serving a summons and complaint on October 10, 1975, shortly before the expiration of the statute of limitation.

### 1978

Plaintiff filed the summons and complaint with the Minnehaha clerk of courts on April 14, 1978, together with a notice of trial stating that the action would be brought on for trial in the term of court beginning May 1, 1978.

The record reflects that during 1978 there was activity between the two defendants [1] which resulted in an order granting partial summary judgment in favor of The Austin Company on November 15, 1978.

### 1979–1981

The court file reflects no activity.

### 1982

On February 8, 1982, Electric Construction Company served a set of interrogatories upon plaintiff.

### 1983

On December 8, 1983, the circuit court (Judge Heege) issued an order to show cause why the case should not be dismissed for want of prosecution since there had been no activity for more than a year. SDCL 15–11–11.

### 1984

The order to show cause hearing was held on January 30, 1984. In his affidavit opposing dismissal, plaintiff's former attorney explained that the delay in the case was due to a) waiting for plaintiff's job status to stabilize so her wage claim would not be speculative, b) counsel's absence from the state from September 1983 through mid-January 1984 due to his sons'

serious personal injuries, and c) counsel's duties as a part-time state's attorney. Counsel said that he had convinced plaintiff that now was the time to bring the matter to a close. He also said that his schedule allowed him to "devote considerable time" to the matter in an attempt to close it as soon as possible.

On January 31, 1984, Judge Heege filed an order dismissing the action without prejudice for want of prosecution effective March 30, 1984, unless further action was taken. On March 3, plaintiff applied to the court for a further extension. On May 22, 1984, Judge Heege filed an order stating that the action had been erroneously dismissed without prejudice and ordering that the case be reopened "provided that the court will dismiss said action without prejudice for want of prosecution on November 1, 1984, if no further action is taken by that date."

Three days before the November 1, 1984, deadline plaintiff served her answers to the interrogatories that Electric Construction Company had served on her on February 8, 1982. Two days later, October 31, 1984, plaintiff served a set of interrogatories on Electric Construction Company.

### 1985

Electric Construction Company answered plaintiff's interrogatories on February 14, 1985.

Electric Construction Company took plaintiff's deposition on October 31, 1985. On November 12, 1985, new counsel for plaintiff was present at her deposition and filed a notice of appearance.

### 1986

On December 22, 1986, Electric Construction Company deposed Robert Erkonen, an economist hired by new counsel. Erkonen had completed his final report in May 1986. Plaintiff, through counsel, then wrote defendants on December 29, 1986, outlining her settlement demand.

### 1987

On January 28, 1987, plaintiff served a second set of interrogatories on Electric Construction Company.

---

**1.** Appellees' brief incorrectly states that plaintiff filed requests for admissions in April 1978 (AB 2, 4). The Austin Company sought the admissions from Electric Construction Company.

Plaintiff took the deposition of her orthopedic surgeon, Dr. Nice, on April 22, 1987. This deposition was taken for the purposes of her worker's compensation case, which was concluded in July 1987.

On June 10, 1987, Electric Construction Company answered the interrogatories that plaintiff served on January 28, 1987. On July 29, 1987, the defense filed a motion for summary judgment and a motion to dismiss for failure to prosecute. SDCL 15–11–11, 15–6–41(b). Plaintiff's former and new attorneys filed affidavits in opposition to the motion for summary judgment.[2]

After giving plaintiff ten days to produce probative facts showing there was an agreement between counsel to stay the prosecution of the civil action pending resolution of plaintiff's worker's compensation case, the trial court, (Judge Amundson) dismissed plaintiff's complaint on November 3, 1987. In its letter decision the court noted that there had been nine to ten years of inactivity prior to the first court ordered dismissal and at least two years of inactivity after the reinstatement. The court further said:

> The court record discloses that the plaintiff had a disability rating as early as 1975, an economist was not retained until ten years after the case was served, no discovery was completed until over ten years had elapsed and one dismissal motion was averted by plaintiff approximately eight years after the case was filed. In other words, the plaintiff has allowed this case to go unattended for an excessive amount of time. It is a complete mystery to the court how a motion for trial can be filed in 1978 with nothing further being done by plaintiff to bring the matter on for trial for the next nine years. These facts clearly show that there has been a failure on the part of the plaintiff to prosecute this case.

## DECISION

"For failure of the plaintiff to prosecute ... a defendant may move for dismissal of an action or of any claim against him." SDCL 15–6–41(b). In addition, a trial court may dismiss civil cases "where there has been no activity for one year, unless good cause is shown to the contrary." SDCL 15–11–11.

When reviewing a trial court's grant or denial of a motion to dismiss for failure to prosecute, this court determines whether the trial court abused its discretion. *Duncan v. Pennington County Housing Auth.*, 382 N.W.2d 425 (S.D.1986). The power to dismiss should be exercised cautiously and granted only in cases of an unreasonable and unexplained delay in prosecution. *Id.* The mere passage of time is not the test; rather, the test is whether, "under all the facts and circumstances of the particular case, the plaintiff is chargeable with want of due diligence in failing to proceed with reasonable promptitude." *Id.* at 427.

The plaintiff has the burden to proceed with his action. *Potts v. Starr*, 76 S.D. 91, 72 N.W.2d 924 (1955). A defendant has the duty to meet the plaintiffs "step by step." *Holmoe v. Reuss*, 403 N.W.2d 30 (S.D.1987). As stated in *Holmoe*:

> 'It is true that the defendant may bring about a trial of the case, but he is under no legal duty to do so. His presence in the case is involuntary, and his attitude toward it is quite different from that of the plaintiff; he is put to a defense only, and can be charged with no neglect for failing to do more than meet the plaintiff step by step ...'

*Holmoe, supra,* 403 N.W.2d at 31, *quoting Fox et al. v. Perpetual National Life Insurance Company*, 273 N.W.2d 166 (S.D. 1978). Delays granted at a defendant's request, however, will bar dismissal for failure to prosecute. *Chicago and Northwestern Railway Co. v. Bradbury*, 80 S.D. 610, 129 N.W.2d 540 (1964).

In addition, the filing of a motion to dismiss for failure to prosecute may be granted despite the fact that a plaintiff is currently prosecuting his claim. *Simkens v. Bechtol*, 86 S.D. 187, 192 N.W.2d 731

---

**2.** Plaintiff's appellate counsel did not represent her before the circuit court.

(1971). In *Simkens* this court ordered dismissal of an action where service of garnishment and a request for a trial date followed eight years of inactivity. Moreover, it should be noted that "present counsel's diligence [will] not correct prior derelictions." *Duncan, supra*, 382 N.W.2d at 428, wherein eight years had elapsed since the action was initiated and more than five years had elapsed since all the information was available for trial.

■ We observe here that fifteen years have elapsed since plaintiff was injured. Twelve years have elapsed since the summons and complaint were served. When Judge Amundson entered his judgment of dismissal, three and one half years had elapsed since Judge Heege reopened the case.

Plaintiff concedes that there was a long period of inactivity prior to the 1983 trial court order to show cause why the matter should not be dismissed for lack of prosecution. Plaintiff argues that Judge Heege's order reopening the case "pardons" the prior inactivity. Further, plaintiff argues that she has proceeded with due diligence and promptitude since the issuance of the order reopening the case. She points to the facts that she served interrogatories and hired new counsel who in turn hired an economist, initiated settlement negotiations, served a second set of interrogatories, and settled her worker's compensation case.

Defendants argue that the dismissal must be viewed in light of the entire life of the case. They argue that even after Judge Heege allowed the action to proceed in 1984, plaintiff had a "notable paucity of action" and has offered no explanation for any of the delay.

The Supreme Court of North Dakota faced a somewhat similar factual situation in *Ternes v. Knispel*, 374 N.W.2d 879 (N.D. 1985). Plaintiff Ternes was injured in 1975. His South Dakota attorney (Mines) commenced suit in 1977. The defendant moved to dismiss for failure to prosecute under N.D.R.Civ.P. 41(b) (identical to SDCL 15–6–41(b)) in March 1981 after three and a half years of inactivity. Mines resisted by affidavit, stating he had been unable to ascertain total damages until August 1980 and stating his current ability to conclude the suit.

The trial court denied the motion to dismiss and admonished Mines to diligently prosecute the action. From March 1981 to May 1984, plaintiff deposed defendant and retained experts. Mines transferred the case to North Dakota counsel in May 1984 who engaged in settlement negotiations. Plaintiff's letter accepting defendant's offer crossed in the mail with defendant's letter withdrawing the offer and moving to dismiss for failure to prosecute.

In upholding the dismissal for failure to prosecute the North Dakota Supreme Court noted:

> We affirm the trial court's decision for a number of reasons. Ternes [plaintiff] had been warned to prosecute his case with dispatch, a direction he apparently chose to ignore despite his pledge to proceed with alacrity. Lack of prosecution following an instruction to act assiduously argues strongly for dismissal. *California Molasses Co. v. C. Brewer & Co.*, 479 F.2d 60 (9 Cir.1973); *see generally* Wright & Miller, Federal Practice and Procedure: Civil § 2370, pp. 205–206. Ternes provided no explanation or excuse for his lack of prosecution, which might have militated against dismissal. *See Cherry v. Brown–Frazier–Whitney*, 548 F.2d 965 (D.C.Cir.1976). Finally, Knispel [defendant] was prejudiced by Ternes' prolonged delay in bringing this matter to trial. The trial judge was legitimately concerned over the availability of witnesses and the reliability of their memories.

374 N.W.2d at 881. The court also rejected plaintiff's argument that the parties had been engaged in settlement negotiations, the case was on the trial calendar, and that plaintiff was ready for trial, noting that plaintiff took seven years after instituting suit before undertaking serious negotiations. The trial court's dismissal was based solely, however, on Mines' failure to prosecute and not on the manner in which North Dakota counsel represented plaintiff after Mines transferred the case to him.

Based on our clear precedent and further adopting the rationale of the North Dakota

Court in *Ternes*, we conclude that the trial court did not abuse its discretion and properly dismissed plaintiff's complaint.

AFFIRMED.

WUEST, C.J., and MORGAN and HENDERSON, JJ., concur.

SABERS, J., dissents.

SABERS, Justice (dissenting).

I dissent. Although this case was properly dismissed for lack of prosecution (SDCL 15–6–41(b)) and inactivity for one year (SDCL 15–11–11) in 1984, it was re-opened subject to certain activity by November of 1984. The required activity occurred and no appeal was taken from the order reopening the case.

Plaintiff relied on this order and produced substantial activity from November 1984 until the dismissal motion in July 1987. This activity was produced at substantial cost and expense after hiring new counsel. In addition to the numerous smaller expenses in preparing for litigation, the plaintiff expended a great deal on depositions and hiring an expert witness to prepare a report on the plaintiff's economic loss.

SDCL 15–11–11 cannot be used as a basis for dismissal in this case because there was (much) activity within the last one year. Therefore, the question is whether the plaintiff's claim can be dismissed for "failure to prosecute" under SDCL 15–6–41(b). The record reflects that plaintiff's new counsel reasonably pursued the prosecution of plaintiff's claim and did not engage in any unreasonable delay.*

Even if this dismissal is viewed in light of the entire life of the case, it appears unduly harsh in view of the court's reopening, plaintiff's recent activity at great cost and expense in reliance thereon, and the fact that the case is substantially ready for trial.

---

* The plaintiff hired new counsel in July of 1985, who immediately contacted the other parties involved in this case and the worker's compensation case. New counsel did not file an official notice of appearance until November of 1985, but began to get involved with the file from July to November, including defending plaintiff at her deposition in October of 1985. New counsel hired an expert to determine the plaintiff's economic loss in November of 1985 and sent the expert's final report to the defendant in May of 1986. Defendant did not make a request to take the expert's deposition until November of 1986, and the deposition was taken in December. The same month new counsel sent an offer of settlement to the defendant. A second letter regarding the settlement offer was sent after no response was received from the defendant for nearly four months. Defendant eventually did respond with a counter-offer, but this was rejected by the plaintiff. In January of 1987, new counsel sent a second set of interrogatories to the defendant, which were not answered for nearly five months. The same month, new counsel sought to take the deposition of the plaintiff's examining physician. The physician was unavailable until late April of 1987. During this period new counsel began extensive negotiations to settle the worker's compensation claim. A settlement on the claim was reached in June of 1987. In addition, the record reflects that new counsel made numerous telephone calls and letters in furtherance of the plaintiff's claim. In July of 1987, the defendant made a motion to dismiss for lack of prosecution. The motion was granted in November of 1987.